10-21705.rr2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21705-CIV-MARTINEZ/BROWN

WALLACE C. JONES JR.,

    Plaintiff,

vs.

OFFICERS KELVIN JOHNSON, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Defendants Edwards and Desroches' Motion to Dismiss Complaint with Prejudice, filed July 2, 2010 (D.E. 30) and on Defendant Thomas's Motion to Dismiss Complaint with Prejudice, filed July 20, 2010 (D.E. 39)[1]. The Court has reviewed the Motions, the Responses and the complaint, and is otherwise fully advised.

## FACTS

Plaintiff Wallace C. Jones, Jr. has filed a fifteen page (plus attachments) pro se "Civil Rights Complaint" ("Complaint" or "Cmplt.") against Defendant The Honorable Robert M. Deehl as well three Miami Dade Police Officers, including Officer Derrick Edwards ("Officer Edwards", referred to in the Complaint as "Detective Edwards"), Officer Roody Desroches ("Officer Desroches", referred to in the Complaint as "Detective Desroches") and Officer Kevin Thomas ("Officer Thomas", referred to in the Complaint as "Kelvin Johnson" or "Detective Johnson") (collectively, "the Officers"), with

---

[1] Defendant Thomas states that he was misnamed in the complaint as "Kelvin Johnson" and "Detective Johnson."

respect to events surrounding his arrest on May 17, 2010.

Although the Complaint is difficult to understand at times, the basis of Plaintiff's complaint appears to be as follows. On May 17, 2010, a uniformed police officer (not named as a defendant) knocked on Plaintiff's door, and the following occurred:

> Plaintiff opened the duplex front door to inquire the officers presents. [sic] The uniformed police officer, pointing his fingure [sic] asked plaintiff if he knew whom gray pick-up truck, was it parked next door. When plaintiff leaned further out of his front door to see what the miami-dade county - uniformed metro police officer was talking about, the officer grabbed plaintiffs[ ]left hand, swisted [sic] it and placed plaintiff in hand-cuffs, as the officer pulled plaintiff away from his front door and residence ...

Compl. p. 1. Plaintiff states that he was placed in the back of an unmarked vehicle, "hand-cuffed for maybe twenty minutes", at which time Officer Thomas told him that he was "wanted for questioning by [Officer Edwards]." Cmplt. p. 2. Officer Thomas allegedly told Plaintiff that he instructed the uniformed officer to "snatch" Plaintiff and handcuff him because "he did not know plaintiffs['] mind of thinking, that maybe plaintiff would have shoot [sic] the police or something." Id. Plaintiff alleges that he was transported to the police station and was seated, still hand-cuffed for approximately 15 minutes, at which point Plaintiff "uttered his high blood pressure/heart condition ordeal and his limbs swelling due to the cuffs" and Officer Thomas removed the handcuffs from Plaintiff's back and replaced them in the front, thereby relieving some of Plaintiff's pain. Id.

Plaintiff further alleges that Officers Edwards and Desroches took Plaintiff to an interrogation room where he was questioned after waiving his Miranda rights and was ultimately was charged with violation of Fla. Stat. §843.08 ("Falsely personating officer") and §843.085 ("Unlawful use of police badge or other indicia of authority"). Complt. Appx. 5. According to the Complaint and the attached arrest affidavit, the charges concerned Plaintiff's appearance at the Department of Children and Families ("DCF") office on May 5, 2010, at which time Plaintiff attempted to serve a DCF official

with a copy of a motion for summary judgment in another federal case in which he is also a pro se plaintiff.

Plaintiff alleges that he told the officers his version of what happened, which was that he spoke to a receptionist and two DCF employees, identified as "Ms. Brown" and "Ms. [Lauren] Baker." Ms. Baker allegedly met with Plaintiff but refused to accept service and said to Plaintiff "you can give it to my counsel," at which point Plaintiff then left the office. Cmplt. pp. 3-4. Plaintiff alleges that Officer Edwards asked Plaintiff if he had a "badge or [sic] some sort," and he responded that he did not and only had his Florida drivers license. Compl. p. 2. Officer Desroches asked questions regarding whether Plaintiff had a law degree and why he went to serve the papers without "state approval of some sort." Compl. p. 3. Plaintiff again allegedly explained that he was representing himself in the federal suit and that he needed to serve a copy of the motion, and again gave his version of what happened, including some other additional details.

Plaintiff further alleges that Officer Desroches became "argumetaive" [sic] with him and said that he was going to charge him with impersonating a police officer. Compl. p. 4. Plaintiff then sat in the interrogation room for 45 minutes, then was transported to the county jail for processing, where he was given a copy of the arresting affidavit (attached as Appx. 5) which states, *inter alia*, as follows:

> ON THE LISTED DATE AND TIME THE DEFENDANT WENT TO THE DEPARTMENT OF CHILDREN AND FAMILIES (DCF) OFFICE LOCATED AT THE CALEB CENTER TO SERVED [sic] PAPERS ON DCF WORKERS IN THAT OFFICE REFERENCE A CIVIL MATTER BETWEEN DCF AND DEFENDANT. UPON ENTERING THE OFFICE THE DEFENDANT DEMANDED THAT THE VICTIM SIGN THE PAPERS THAT HE BROUGHT. THE VICTIM BECAME CONCERNED AND ASKED THE DEFENDANT WHO HE IS AND THE DEFENDANT STATED THAT HE [IS] WALLACE JONES AND THAT HE IS LAW ENFORCEMENT AND HE IS CONNECTED WITH THE US MARSHALL'S [sic] OFFICE. THE VICTIM THEN ASKED THE DEFENDANT TO SHOW HER HIS IDENTIFICATION. THE

> DEFENDANT THEN REMOVED A BLACK WALLET FROM HIS POCKET AND FLASHED IT OPEN REVEALING A LAW ENFORCEMENT BADGE/INSIGNIA AND QUICKLY CLOSE[D] IT AND STATED THAT IF SHE REFUSED TO SIGNED [sic] HE WILL HAVE HER ARRESTED. THE DEFENDANT WAS ASKED TO WAIT OUTSIDE THE OFFICE WHEN HE LEFT. POST MIRANDA READ PER FORM THE DEFENDANT WAIVED HIS RIGHTS AND STATED THAT HE WENT TO THE OFFICE AS A PROCESS SERVER TO SERVED [sic] PAPERS ... , IN DOING SO HE WAS ASKED TO SHOW HIS ID. TO THE VICTIM AND THAT AT THAT TIME HE OPEN[ED] HIS WALLET SHOWING HIS ID. AND A BUSINESS CARD FROM THE US. MARSHALL [sic] OFFICE, AND AT NO TIME DID HE STATED [sic] THAT HE IS LAW ENFORCEMENT. THE DEFENDANT WAS ARRESTED AND TRANSPORTED TO DJC.

Compl. App. 5.

It appears that Plaintiff attempts to bring the following claims against the Officers:

**Officer Thomas:**

- "Fourth Amendment warrantless arrest claim," "Fourth Amendment unreasonable seizure claim," "Fourteenth Amendment immunity and privilege claim" "Fourteenth Amendment Liberty claim" and "Fourteenth Amendment Discrimination claim" based on Officer Thomas instructing the uniformed police officer to knock on his front door and detain him without a warrant, and to transport him to the police station against his will;

- "Fourth Amendment probable cause claim" based on Officer Thomas instructing the uniformed police officer to knock on his front door and detain him without cause;

- "Eighth Amendment Excessiveness claim" based on Officer Thomas instructing the uniformed police officer to arrest him without a warrant at which time "the officer grabbed plaintiffs['] left arm, and forcefully bent it behind plaintiffs['] back, causing pain to run up plaintiffs['] left arm and back area." Compl. p. 6;

- "Eighth Amendment Cruel and Unusual claim" based on Officer Thomas instructing the uniformed police officer to arrest him without a warrant and then "put Plaintiff into [Officer Thomas's] unmarked vehicle, to which for approximately [sic] 20 minutes plaintiff sat cramped-up and in pain caused by the tight hand-cuffs." Compl. p. 6.

**Officers Edwards and Desroches:**

- "Fourth Amendment probable cause claim", "Sixth Amendment Informed of the Nature and Cause of Accusation claim" and "Fourteenth Amendment Discrimination claim" based on Officers Edwards and Desroches charging Plaintiff with the offenses;

- "Eighth Amendment Cruel and Unusual claim" based on Officers Edwards and Desroches charging and jailing him.

Plaintiff seeks nine million dollars in damages.

## DISCUSSION

The officers move to dismiss the complaint based on failure to state a cause of action under 42 U.S.C. §1983[2]; and/or qualified immunity.

Plaintiff's complaint is convoluted and repetitious, and difficult to understand at times. Although Plaintiff is proceeding pro se, he is still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). Plaintiff's complaint is clearly in violation of Fed.R.Civ.P. 8(a), which requires that the plaintiff file "a short and plain statement of his claim," Fed.R.Civ.P. 8(d), which requires that allegations in the complaint "must be simple, concise, and direct", and Fed.R.Civ.P. 10(b), which requires that "a party must state its claims ... in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count..." The complaint has run-on sentences (e.g., the factual allegations are contained in a single paragraph which runs for almost five pages), fails to clarify exactly which of claims pertain to each defendant, fails to state in what capacity defendants are being sued, and fails to separately number each count for clarity. Therefore, Plaintiff's complaint is subject to being dismissed on these grounds alone.

---

[2] Section 1983 provides a civil cause of action for "a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing 42 U.S.C. §1983).

I. **Standard on Motion to Dismiss**

For purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations of material fact must be taken as true. Watts v. Florida Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007). In order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a plaintiff must provide "more than labels and conclusions," and the complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). In Watts, 495 F.3d 1289 (11th Cir. 2007), the Court summarized the principles established in Twombly as follows:

> The standard is one of "plausible grounds to infer." The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

Id. at 1295-96. As such, a complaint is facially plausible when the plaintiff has pleaded sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Furthermore, "[a] complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Criswell v. Intellirisk Management Corp., Inc., 286 Fed. Appx. 660, 664 (11th Cir. 2008) (quoting Sams v. United Food & Comm'l Workers Int'l Union, 866 F.2d 1380, 1384 (11th Cir. 1989)).[3] When it appears that on the basis of a dispositive issue of law

---

[3] The Eleventh Circuit no longer applies a heightened pleadings standard to civil rights complaints brought under 42 U.S.C. §1983 against individuals who may be entitled to qualified immunity. Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010).

no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. D.P. ex rel. E.P. v. School Bd. Of Broward County, 483 F.3d 725, 728-29 (11th Cir. 2007) (quoting Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)).

Moreover, the doctrine of qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights. Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010) (citation omitted).[4] A motion to dismiss should be granted if, reading all allegations in the light most favorable to the plaintiff, the complaint "fails to allege the violation of a clearly established constitutional right." Snider v. Jefferson State Community College, 344 F.3d 1325, 1327 (11th Cir. 2003) (internal quotation marks omitted).[5]

Although a pro se plaintiff's complaint should be liberally construed when resolving a motion to dismiss, this Court has no obligation to rewrite the Complaint for the plaintiff. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## II. Fourth and Fourteenth Amendment Claims based on detention/seizure without a warrant

The Fourth Amendment provides that

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

---

[4]Only decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of Florida can clearly establish the law in this Circuit. See Marsh v. Butler County, 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001) (en banc).

[5]Because the defense is one of immunity from suit, as opposed to damages only, courts should apply the affirmative defense of qualified immunity at the motion to dismiss stage. Marsh, 268 F.3d at 1022.

and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV. The "'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. U.S. Dist. Court, 407 U.S. 297 (1972)).[6]

Absent consent or exigent circumstances, an arrest in a home is plainly subject to the warrant requirement and probable cause alone is insufficient. Payton v. New York, 445 U.S. 573, 589-90 (1980). The Supreme Court defined the scope of the Amendment's protection by stating that "the Fourth Amendment has drawn a firm line at the entrance to the house," id. at 589-90, and that "any physical invasion of the structure of the home, 'by even a fraction of an inch' [is] too much." Kyllo v. United States, 533 U.S. 27, 40 (2001) (quoting Silverman v. United States, 365 U.S. 505, 512 (1961)); compare Knight v. Jacobson, 300 F.3d 1272 (11th Cir. 2002) (no Fourth Amendment violation where officer instructed suspect to step outside his apartment and then arrested him).

In McClish v. Nugent, 483 F.3 1231 (11th Cir. 2007), officers went to the plaintiff's home to effect an arrest, and when they knocked on the door, defendant opened it. The plaintiff was "pulled from within his home, without warning, as soon as the door was opened." Id. at 1241. The Court determined that the officer violated the plaintiff's rights "by reaching through [the plaintiff's] open doorway to effect the arrest when [the plaintiff] was standing near the doorway but fully within the confines of his home." Id. at 1241, 1249.

Here, Plaintiff Jones alleges that he "leaned" out of the house, and that the officer "pulled" him

---

[6]The Court analyzes the constitutionality of the detention of Plaintiff as a "seizure" in light of the facts alleged. Although the Fourteenth Amendment due process clause also protects against unreasonable seizures, because the Fourth Amendment's right to be free from unreasonable seizures is more specifically stated, the claim will be analyzed under that Amendment. See Hill v. Mull, No. 5:04-CV-329 (DF), 2006 WL 3022280, at *5 (M.D. Ga. Oct. 23, 2006) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

from the house, but he never specifically alleges that the officer actually reached into the house at any time. Therefore, the Court finds that Plaintiff's current complaint fails to state a cause of action for violation of the Fourth Amendment based on the detention/seizure of plaintiff in his home.[7] However, the Court find that this Fourth Amendment claim should be dismissed without prejudice and with leave to amend, if appropriate.

### III. Fourth Amendment Claims based on lack of probable cause to seize/charge

Plaintiff also claims that his Fourth Amendment rights were violated by all three Officers because he was seized and then ultimately arrested and charged without probable cause. "A warrantless arrest [seizure] without probable cause violates the Constitution and forms the basis for a section 1983 claim." Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990). However, an officer needs only "arguable probable cause" to be eligible for qualified immunity. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007).[8] Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could have believed* that probable cause existed to arrest." Id. (internal quotation marks omitted). Whether the officer had arguable probable cause depends on elements of the alleged crime. Id.

Florida Statute § 843.08 ("Falsely personating officer") provides as follows:

> A person who falsely assumes or pretends to be a ... federal law enforcement officer as defined in s. 901.1505, and takes upon himself or herself to act as such, or to require any other person to aid or assist him or her in a matter pertaining to the duty of any such officer, commits a felony of the third degree,

---

[7] The Court additionally notes that to the extent that Plaintiff seeks to hold Officer Thomas responsible for the acts of the uniformed officer, there is no respondeat superior or vicarious liability under §1983. See, e.g., Belcher v. City of Foley, Ala., 30 F. 3d 1390, 1396 (11th Cir. 1994). Although there may be supervisory liability, this only occurs "when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Id. at 1396-97.

[8] Clearly, officers are acting within the scope of their authority during the course of an arrest. See Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1327 n. 4 (11th Cir. 2006).

...

Fla. Stat. §843.08. In this case, the complaint, which attaches the arrest affidavit as an exhibit, indicates that the officers had been advised by a DCF employee that Plaintiff had appeared at the DCF office and identified himself as "law enforcement" and "connected with the U.S. Marshal[]'s Office", and that he revealed to her a "law enforcement badge/insignia". Appx. 5.[9] This clearly supports a finding of at least arguable probable cause for arresting and charging Plaintiff with the crime of falsely personating an officer.

Accordingly, Plaintiff's Fourth Amendment claims that he was arrested and charged without probable cause should be dismissed with prejudice based on qualified immunity.

## IV. Eighth Amendment/Claims based on Excessive Force

The Eighth Amendment's protection does not attach until after conviction and sentence. See Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977). Accordingly, those claims must be dismissed with prejudice. Moreover, although Plaintiff's claim against Officer Thomas for use of excessive force during the course of his arrest might be more properly analyzed under the Fourth Amendment (see Graham v. Connor, 490 U.S. 386, 394 (1989)), Plaintiff's allegations do not rise to the level of force necessary to state such a claim.

The test for whether the use of force was excessive is one of "objective reasonableness". Id. at 397; see also Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007). This requires a balancing of the nature of the intrusion into the plaintiff's Fourth Amendment interests against he government's interest

---

[9] A copy of a document which is attached to the complaint is part of the complaint for all purposes. Fed.R.Civ.P. 10(c). Although the arrest affidavit also states that during questioning, Plaintiff himself stated that he displayed a card from the U.S. Marshal's Service to the DCF worker, Plaintiff makes allegations to the contrary in the complaint, and therefore the Court does not consider Plaintiff's "admission" in evaluating probable cause. Nowhere in the complaint, however, does Plaintiff allege that the DCF worker did not make the stated report to the arresting officer.

in using force, and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight". Id. at 396 (citation omitted). "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. Painful handcuffing, by itself, does not constitute excessive force. Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002); see also Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997) (finding that handcuffing that causes skin abrasions, for which the arrestee does not seek medical treatment, indicates the use of minimal force).

Plaintiff alleges that another officer, not Officer Thomas, placed Plaintiff in handcuffs,[10] and that when he "alerted [Officer Thomas] that the cuffs were to[o] tight ... at that time, plaintiff uttered his high blood pressure/heart condition ordeal and his limbs swelling due to the cuffs," Officer Thomas removed the cuffs from behind and placed them in the front which "revealed [sic] plaintiff of some pain." Complt p. 2. The Court finds that Plaintiff has failed to state a constitutional claim against Defendant Thomas based on handcuffing, and those claims should be dismissed with prejudice.

## V. Fourteenth Amendment Discrimination Claims

Plaintiff fails to state a claim against any of the Officers under the Equal Protection Clause of the Fourteenth Amendment in that he fails to allege that the defendants acted with the purpose to discriminate against him based on his membership in a constitutionally protected class. See, e.g., Woodbury v. City of Tampa Police Dept., No. 8:10-CV-0772-T-30AEP, 2010 WL 2557677, at*2 (M.D. Fla. June 8, 2010).

---

[10] Although plaintiff alleges that Detective Thomas instructed the officer to arrest him, there is no allegation that he instructed him to use excessive force when doing so, or that Defendant Thomas was aware of the procedure which took place during the handcuffing.

### VI. Sixth Amendment Informed of the Nature and Cause of Accusation claim

Plaintiff's claim under the Sixth Amendment should also be dismissed. In that section, Plaintiff admits that he was given a copy of the arrest affidavit. Although Plaintiff alleges that portions of what was stated in the affidavit are not true, he clearly was advised of the charges that were being made against him.

### RECOMMENDATION

Accordingly, this Court respectfully recommends as follows:

1. That Defendant Thomas's Motion to Dismiss Complaint with Prejudice be **GRANTED** in part to the extent that all claims should be **DISMISSED WITH PREJUDICE** with the exception of the Fourth Amendment claim based the seizure of Plaintiff from his home without a warrant, which should be **DISMISSED WITHOUT PREJUDICE**.

2. That Defendants Edwards and Desroches' Motion to Dismiss Complaint with Prejudice be **GRANTED** in its entirety and that the claims against them be **DISMISSED WITH PREJUDICE**.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 30th day of August, 2010 at Miami, Florida.

STEPHEN T. BROWN
CHIEF U. S. MAGISTRATE JUDGE

Hon. Jose E. Martinez
Wallace C. Jones, Jr., pro se
counsel of record